**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-20979-COOKE/DAMIAN

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
BRT3A000415-02,

    Plaintiff,

vs.

A.M.A. CONSULTING & CONSTRUCTION
SERVICES, INC. d/b/a AMA & ASSOCIATES,
ANGEL MANUEL ALVAREZ, FONTAINEBLEAU
GARDENS CONDOMINIUM ASSOCIATION, INC.,
and CIPRES, LLC,

    Defendants.
_____/

**REPORT AND RECOMMENDATION AS TO**
**PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT**

    THIS CAUSE came before the Court on Plaintiff, Certain Underwriters at Lloyd's London Subscribing to Policy BRT3A000415-02's ("Plaintiff" or "Lloyds"), Motion for Default Final Judgment against Defendants, A.M.A. Consulting & Construction Services, Inc. ("AMA"), Angel Manuel Alvarez ("Alvarez"), Fontainebleau Gardens Condominium Association, Inc. ("The Association"), and CIPRES, LLC ("CIPRES") (collectively, "Defendants") [ECF No. 16] (the "Motion"). This matter was referred to the undersigned for Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 20]. *See* 28 U.S.C. § 636.

    THIS COURT has considered Plaintiff's Motion and supporting documents and the pertinent portions of the record. The Court observes that Defendant did not file a response to the Motion, and the time to do so has passed. For the following reasons, it is recommended that Plaintiff's Motion for Default Final Judgment [ECF No. 16] be granted.

I.     PROCEDURAL POSTURE

On March 12, 2021, Plaintiff initiated the instant action against Defendants solely seeking declaratory relief regarding insurance coverage and its duty to defend related to claims for property damage. [ECF No. 1]. Defendants were served with the Summons and Complaint on March 18 and 19, 2021 [ECF Nos. 7–10], and failed to respond. After Defendants failed to appear, Plaintiff moved for entry of defaults against each Defendant [ECF Nos. 11–14], which the Clerk of Court subsequently entered on April 13, 2021 [ECF No. 15]. Plaintiff now moves for entry of default final judgment against all Defendants. [ECF No. 16].

As of the date of this Report, Defendants have not responded to the Complaint, the Motion, nor any other filings in this case. Nor has an attorney made an appearance on any Defendant's behalf.

II.    BACKGROUND

The Insurance Policy

Plaintiff/Lloyds entered into the relevant insurance contract with AMA, bearing certificate number BRT3A000415-02, for the policy period of September 7, 2019 until September 7, 2020 (the "Policy"). (*See* ECF No. 1 at Exhibit "A"). In relevant part, the Policy provides:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> * * *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II -Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

\* \* \*

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your

stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

\* \* \*

ECF No. 1 at Exhibit "A").

The Policy also contains the following endorsements:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**EXCLUSION – ROOFING LIMITATION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION I – COVERAGES**, paragraph 2. Exclusions of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions of COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

Roofing Limitation

1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

a) The handling, storage or transportation of hot tar or any other heated substance; or

b) Any job site where you are working, or have worked, on a roof of a building or structure, whether work is completed or not, in excess of three (3) stories or thirty-six (36) feet in height.

2) "Property damage" to any building or structure as a result of fire if caused by the application of open flame or torch to roofing materials or to any roof whether removing a roof or roofing materials, or installing a roof or roofing materials.

3) "Property damage" to any building or structure or its contents or any related items, arising for any reason out of the intrusion of rain, snow, sleet or hail during the course of any insured's "roofing operations"; unless you or any contractor or subcontractor working directly or indirectly on behalf of any insured applies a "secured protective cover" of waterproof material over all portions of the "open roof," to entry by any of the causes of loss mentioned in this paragraph 3.

**The following is added to SECTION V - DEFINITIONS**

"Open roof" means: a roof or section of a roof from which the protective covering (shingles, tar, tiles, felt paper, etc.) has been removed leaving exposed the decking, supporting structure, or interior of the building or its contents to the intrusion of rain, snow, sleet or hail.

"Roofing operations" means: the removal of any old roofing material and the application of new roofing material.

"Secured protective cover" means: weatherproof covering applied and securely fastened as if permanent in nature except for its temporary employment until completion of the "roofing operations".

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**CONDOMINIUM, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
The following is added to **SECTION I – COVERAGES, paragraph 2. Exclusions of COVERAGE A. BODILY INJURY AND PROPERTY**

**DAMAGE LIABILITY** and paragraph **2. Exclusions of COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Condominium and Townhouse**

"Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's sub-contractor's operations, "your work", or "your product", that are incorporated into a condominium or townhouse project. This exclusion applies only to projects that exceed 25 units. This exclusion does not apply if "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

* * *

(*See* ECF No. 1 at Exhibit "A").

The Application for The Insurance Policy

Prior to Lloyds binding coverage for AMA, AMA completed a Florida Commercial Insurance Application, which was signed by Alvarez on behalf of AMA, and which stated that Alvarez represented that the answers to the application are true, correct and complete to the best of his knowledge.

A supplement to the application, entitled Roofing Contractors Supplemental, included the following question: "What is the maximum height of any job and # of stories?" AMA, through Alvarez, answered the question by indicating "3," as in, three stories. (*See* ECF No. 1 at ¶ 20 and Exhibit "B"). Lloyds alleges it relied upon AMA's responses in the Florida Commercial Insurance Application, including the Roofing Contractors Supplemental, when it issued policies to AMA, including renewals such as the Policy. (*See* ECF No. 1 at ¶ 21).

In addition, a GL Verification Survey was similarly completed prior to coverage being bound for AMA. Question 21 of the Survey asked, "Does your operation include any of the following? ... Condominiums". In response, AMA, through Alvarez, marked the box indicating "No". (*See* ECF No. 1 at ¶ 22 and Exhibit "C"). Lloyds alleges it relied upon AMA's responses in the GL Verification Survey when it issued policies to AMA, including renewals such as the Policy. (*See* ECF No. 1 at ¶ 23). Lloyds further alleges that had it known the true facts, it would have either not bound coverage for AMA under any policy or issued

any subsequent renewals including the Policy to AMA, entered into the Policy with different terms, or entered into the Policy with a higher premium. (*See* ECF No. 1 at ¶ 54).

### The Underlying Lawsuits

On September 10, 2020, the Association filed a lawsuit against AMA in the Circuit Court of Miami-Dade County, Florida, styled *Fontainebleau Gardens Condominium Association, Inc. v. A.M.A. Consulting & Construction Services, Inc.*, Case No. 2020-019384-CA-01 (the "Association Lawsuit"). (*See* ECF No. 1 at ¶¶ 1, 24 and Exhibit "D"). The Complaint in the Association Lawsuit (the "Association Complaint") arises from alleged water damage at the Fontainebleau Gardens Condominiums, located at 8075 NW 7th Street, 8145 NW 7th Street, and 8185 NW 7th Street in Miami, Florida (the "Properties"), which is alleged to have occurred on or about December 22, 2019. Lloyds alleges the Properties consist of five-story buildings with a total of more than 25 units. (*See* ECF No. 1 at ¶¶ 25–26, 40, 45, and Exhibit "E").

The Association Complaint alleges the Association and AMA entered into a contract on July 11, 2019, for AMA to perform repairs to the roof of the Properties. (*See id.*) According to the Association, AMA did not properly protect the Properties from damage by leaving the Properties uncovered during a wind and rain storm while working on the roof. The Association further alleges that AMA's work at the Properties caused damage to the Properties as well as to several unit owners (including the CIPRES claim) with the Association. (*See* ECF No. 1 at ¶¶ 27–28, and Exhibit "B" to Exhibit "E"). The Association sued AMA for breach of contract, breach of express warranty, breach of implied warranty, Florida Statute § 627.4137, and negligence. (*See* ECF No. 1. at ¶ 28).

Additionally, on July 21, 2020, CIPRES filed a lawsuit against AMA and Alvarez in the Circuit Court of Miami-Dade County, Florida, styled *CIPRES, LLC v. Fontainebleau Gardens Condo. Ass'n Inc., et al.*, Case No. 2020-015344-CA-01 (the "CIPRES Lawsuit"). (*See* ECF No. 1 at ¶¶ 1, 29, and Exhibit "F"). The CIPRES Lawsuit similarly arises from alleged water damage at CIPRES' unit in one of the buildings at the Properties. According to the allegations of the CIPRES Complaint, and consistent with the allegations in the Association Lawsuit, the Association and AMA/Alvarez entered into a contract for AMA/Alvarez to replace the existing roof at one of the buildings at the Properties. (*See* ECF No. 1 at ¶¶ 30–31, and Exhibits "E" and "F"). CIPRES alleges that AMA/Alvarez performed faulty,

substandard or inferior repairs to the roof and exterior portions of the Properties, which allegedly resulted in water intrusion to CIPRES' unit at the Properties, causing damage to CIPRES.

Lloyds alleges in the instant action that it investigated and determined that it has no duty to defend AMA or Alvarez against the Underlying Lawsuits based upon the exclusions in the Policy. (*See* ECF No. 1 at ¶ 34). Subsequently, Lloyds filed the instant declaratory relief action against AMA, Alvarez, the Association, and CIPRES on March 12, 2021. (*See* ECF No. 1). In its Complaint, Lloyds asserts it has no obligation under the Policy to defend, or therefore indemnify, AMA or Alvarez against the Underlying Lawsuits based upon the endorsement referenced above, and due to the alleged misrepresentations by AMA in the Roofing Contractors Supplemental and the GL Verification Survey. (*Id*. ¶¶ 38–42).

Accordingly, Lloyds seeks a declaratory judgment because, as Lloyds argues, an actual, immediate, and justiciable controversy exists among the parties regarding the rights and obligations of Lloyds and Defendants under the Policy (*Id*. ¶ 14). Lloyds contends that it is in doubt with respect to its rights under the Policy and thus seeks a declaration of its rights and obligations under the Policy with respect to its obligations in connection with the Underlying Lawsuits. Specifically, Lloyds asks for declaratory relief determining it has no duty to defend nor indemnify AMA or Alvarez in connection with the Underlying Lawsuits. As indicated above, no Defendant has appeared or otherwise responded to the instant Motion, and the time for doing so has lapsed.

### III.   APPLICABLE LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for

failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment for damages, a court must ensure that the well-pleaded allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

As indicated, Lloyds moves for entry of a default judgment on its claims seeking a declaratory judgment as to its duties to defend and indemnify. In a diversity case, such as this, the substantive law of the forum state applies. *See Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (citations omitted). Accordingly, to determine whether Lloyds owed a duty to defend or indemnify, the Court must look to Florida law. *See Southern-Owners*, 872 F.3d at 1164.

"Under Florida law, a court may issue a declaratory judgment as to an insurer's duty to defend and duty to indemnify." *Am. Home Assurance Co. v. Vreeland*, No. 05-cv-2250, 2006 WL 1037111, at *1 (M.D. Fla. Apr. 19, 2006) (citing *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5 (Fla. 2004)); *see also AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1337 (M.D. Fla. 2019) ("A declaratory judgment is an appropriate method for the court to determine coverage issues, including the duty to defend and indemnify." (citing *Higgins*, 894 So. 2d at 9)). "An insurer's duty to defend arises from the insurance contract and policy." *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1355 (S.D. Fla. 2017) (citing *Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1997)). Stated differently, "an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions." *Id.* (citation omitted). An insurer's duty to indemnify is narrower than its duty to defend, however, and must be determined by considering the policy coverages in light of the actual facts in the underlying case. *Id.* at 1356 (citations and quotations omitted). Given that the duty to indemnify is narrower than the duty to defend, the duty to indemnify cannot exist where no duty to defend arises. *WellCare of Fla, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009) (citations omitted).

In Florida, an insurance policy is treated like a contract, and thus ordinary contract principles govern the interpretation and construction of such policy. *Zurich*, 246 F. Supp. 3d at 1356. "The resolution of a dispute regarding insurance coverage begins with a review of

10

the plain language of the insurance policy as bargained for by the parties." *Koikos v. Travelers Ins. Co.,* 849 So. 2d 263, 266 (Fla. 2003) (citation omitted). To that end, insurance contracts in Florida must be construed in a "reasonable, practical, sensible, and just" manner. *U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.*, 279 F. App'x 879, 880 (11th Cir. 2008) (citations and quotation omitted).

Florida courts give terms used in a policy their plain and ordinary meaning and read the terms in the light of the skill and experience of ordinary people. *Id.* at 881 (citation omitted); *see Zurich*, 246 F. Supp. 3d at 1356 (stating that insurance contracts are construed according to their plain meaning under Florida law) (citations and quotation omitted); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (indicating that Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties) (citation omitted). If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is deemed ambiguous. *Anderson*, 756 So. 2d at 34 (citations omitted). Ambiguous policy provisions and exclusions are construed against the drafter and in favor of the insured. *Id.* (citations omitted). Generally, Florida courts interpret provisions providing coverage as broadly as possible to ensure the greatest amount of coverage. *Zurich*, 246 F. Supp. 3d at 1356 (citations omitted). Provisions excluding or limiting the liability of an insurer are construed more strictly than provisions providing coverage, however. *Freedom Village*, 279 F. App'x at 880 (citation omitted).

### IV. DISCUSSION

With the foregoing in mind, the Court turns to the allegations in the Complaint and the Policy at issue. In this case, Lloyds essentially contends that the Roofing Limitation Exclusion and the Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement are applicable and enforceable. Lloyds also argues that AMA made material misrepresentations in the Roofing Contractors Supplemental and the GL Verification Survey regarding the maximum height of projects that AMA worked on and whether AMA worked on condominiums and that Lloyds relied on such misrepresentations in issuing the Policy on the terms it did. Given the application of the exclusion and endorsement and the alleged misrepresentations in the insurance application documents, Lloyds asserts that it has no duty to defend or indemnify AMA or Alvarez against the Underlying Lawsuits and that, because

11

the Policy documents and provisions at issue are unambiguous and enforceable, Lloyds is entitled to a default declaratory judgment.

As discussed above, courts will construe an insurance contract according to its plain meaning. *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1301 (11th Cir. 2012); *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Here, the Policy's Roofing Limitation Exclusion and Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement unambiguously limit the Policy's coverage to property damage arising out of work on job sites not exceeding three stories in height and exclude from coverage damage arising from work on condominium projects that exceed twenty-five units. There is no dispute that AMA was engaged in work on property that exceeded three stories in height and involved a condominium project that exceeds twenty-five units, and, therefore, the Policy does not apply to those damages, and Lloyds has no duty to defend or indemnify with regard to the property damage at issue in the Underlying Lawsuits and is entitled to entry of a default declaratory judgment. *See Evanston Ins. Co. v. Heeder*, 490 F. App'x 215, 217 (11th Cir. 2012) (affirming summary judgment finding no duty to defend or indemnify where classification limitation endorsement limited coverage to residential roofing, and contractor sought declaration that coverage applied in relation to commercial roofing project); *Bluewater Builders, Inc. v. United Specialty Ins. Co.*, No. 13-60396, 2013 WL 5670957, *2–3 (S.D. Fla. Oct. 17, 2013); *Progressive Express Ins. Co. v. Candelas*, No. 19-cv-1957, 2020 WL 6049374, at *5–6 (M.D. Fla. Apr. 16, 2020).

Likewise, Lloyds has sufficiently alleged and provided support for the claim that AMA and Alvarez made misrepresentations in the Roofing Contractors Supplemental and the GL Verification Survey regarding the maximum height and types of buildings and projects they worked on. A review of the Complaint and the Policy support Lloyds' allegation that such misrepresentations were material to Lloyds' decision to issue the Policy as it did. Therefore, the Policy was unenforceable, and Lloyds had no duty to defend nor indemnify based on the Policy. *See Progressive Am. Ins. Co. v. Papasodero*, 587 So. 2d 500, 502 (Fla. 2d DCA 1991) ("[A] material misrepresentation renders the policy null and void from the date of inception.").

Therefore, for all of the above reasons, the Court finds that Lloyds is not required to defend or indemnify based on the Policy and is entitled to entry of a default declaratory judgment.

**V.     CONCLUSION**

Accordingly, it is hereby respectfully RECOMMENDED that:

1. Lloyds' Motion for Final Default Judgment [ECF No.16] be **GRANTED**;
2. A default declaratory judgment be entered in favor of Plaintiff, Certain Underwriters at Lloyd's London Subscribing to Policy BRT3A000415-02, and against Defendants, A.M.A. Consulting & Construction Services, Inc. d/b/a AMA & Associates, Angel Manuel Alvarez, Fontainebleau Gardens Condominium Association, Inc., and CIPRES, LLC, and indicate the following:
    a. The insurance policy bearing certificate number BRT3A000415-02, for the policy period of September 7, 2019 until September 7, 2020, does not provide liability coverage to A.M.A. Consulting & Construction Services, Inc. d/b/a AMA & Associates or Angel Manuel Alvarez due to misrepresentations made in the Roofing Contractors Supplemental and the GL Verification Survey;
    b. Should any individual or entity, including Fontainebleau Gardens Condominium Association, Inc. or CIPRES, LLC, bring a lawsuit against A.M.A. Consulting & Construction Services, Inc. d/b/a AMA & Associates or Angel Manuel Alvarez as a result of their work at Fontainebleau Gardens Condominium, Lloyds maintains no duty to defend A.M.A. Consulting & Construction Services, Inc. d/b/a AMA & Associates or Angel Manuel Alvarez due to the Roofing Limitation Exclusion and the Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement; and
    c. Lloyds maintains no duty to indemnify A.M.A. Consulting & Construction Services, Inc. d/b/a AMA & Associates or Angel Manuel Alvarez under the policy bearing certificate number BRT3A000415-02, for the policy period of September 7, 2019 until September 7, 2020, for any damages in connection with work at the Fontainebleau Gardens Condominium due to the Roofing Limitation Exclusion and the Condominium, Townhouse or Tract Housing Coverage Limitation Endorsement.

IT IS SO REPORTED.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 7th day of February 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE